

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THOMAS E. HALE, | ) |
| | ) |
| Plaintiff, | ) No. 05 C 6113 |
| | ) |
| v. | ) Honorable Charles R. Norgle |
| | ) |
| JOHN E. POTTER, Postmaster General, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendant John E. Potter's ("Defendant" or "Postal Service") Motion

for Summary Judgment against Plaintiff Thomas E. Hale, a former United States Postal Service

employee who alleges that the government discriminated and retaliated against him on account

of his color, race, sex and disability. Hale further alleges that the Postal Service, in denying him

reemployment, violated the Veteran's Preference Act. For the following reasons, the motion is

granted.

## I. BACKGROUND

### A. FACTS

Thomas Hale ("Hale") worked for the Postal Service from May 1979 until March 3, 1988

when he was discharged after an incident in which he profanely and aggressively disputed the

amount of his paycheck. Hale's final confrontation, as it were, was the culmination of a long

record of disciplinary history and a general failure to yield to authority. During Hale's nine

years of employment, the Postal Service suspended him on five separate occasions (1979, 1980,

1981, 1987 and 1988) for a variety of infractions. The final incident involved "unacceptable

conduct evidenced by [Hale] being discourteous, disrespectful and threatening to a postal supervisor...." See Def.'s 56.1 Statement, Ex. D., Notice of Charges.[1] Hale's removal from the Postal Service became effective on December 9, 1988.

Prior to his final discharge, Hale filed a petition to the Merit Systems Protection Board ("MSPB"), challenging the Postal Service's decision to terminate his employment. The MSPB dismissed Hale's claims, however, because he failed to file for review within the prescribed timeframe. Id., Ex. G, MSPB Ltr. Hale appealed that decision on September 9, 1988, but abandoned the appeal to pursue arbitration under the postal workers' collective bargaining agreement. Id., Ex. F. (Hale v. Runyon, No. 92-1725, 1993 WL 290943, at *1 (7th Cir. Aug. 4, 1993)). Hale eventually lost, as the arbitrator found Hale's claim "not justiciable." Undeterred, on April 24, 1990, over a year after he was officially discharged, Hale contacted a representative at the Equal Employment Opportunity Commission ("EEOC") and, six days later, he filed an EEOC complaint against the Postal Service. As expected, the EEOC dismissed Hale's complaint as untimely. On August 1, 1990 the EEOC's Office of Review and Appeals affirmed the commission's decision. From there, Hale turned to the federal courts.

In 1993, unrelated to this action, Hale sought relief in this Court, challenging his 1988 dismissal from the Postal Service as discriminatory. Hale, 1993 WL 290943, at *1-2. In support of Hale's Title VII claim, he alleged that the Postal Service discriminated against him because of an alleged mental handicap, which stemmed from his admitted alcohol abuse and treatment, as well as symptoms similar to schizophrenia. Id. In the end, the Court granted summary judgment

---

[1] The Notice of Charges explains in detail an incident on February 4, 1988 in which Hale entered Room 5504 of the Postal Service's Building Services Office, approached the Acting General Supervisor and "in a threatening manner," stated, "Some motherf[ ]er is going to talk to me today. Why in the f[ ]ck did you WOP me for eight (8) hours?" As his tirade continued, Hale refused to leave, under any circumstances, and explained to the Acting General Supervisor that he could call security because Hale was not going to leave. The Acting General Supervisor thus called security, who escorted Hale from the building.

in favor of the Postal Service because Hale failed to comply with Title VII's time limitations (29 C.F.R. § 1613.214 (a)(1)(i)) and no grounds existed to toll the statute's deadline. Id. at *3. The Seventh Circuit affirmed the Court's decision.

In 1996 Hale began working as a support service worker for the Illinois Department of Human Services ("IHDS"). In 1998 Hale suffered a back injury for which he stopped working and began receiving disability benefits. To receive his benefits, Hale produced to the IHDS on a regular basis a doctor's statement that listed the restrictions on his physical activities. Specifically, Hale was unable to perform the following activities: excessive bending, stooping or lifting; lifting more than 20 pounds repetitively; lifting objects as heavy as fifty pounds; repetitive bending or stooping for more than three hours; and grasping or fingering, such as filing, grabbing hold of heavy objects or climbing a ladder.

In January 2002 Hale took a written examination for the position of Custodian and Laborer with the Chicago Post Office. Hale received on the exam a final score of 107.60, which combined Hale's basic score of 97.60 with an additional ten points given to preferred veterans. Def.'s Rule 56.1 Statement, Ex. K. Hale's score placed him among the top three candidates on the Postal Service's "employment register," which serves as a precursor to the creation of a "Hiring Worksheet" for an open position. By way of background, the Postal Service creates a Hiring Worksheet when a decision is made to hire applicants to an open position. Then, the Postal Service takes the names of those applicants listed on a related employment register and ranks them on the Hiring Worksheet according to their score on the written examination. The Postal Service then hires the candidates for a particular position in the same order that they appear on the Hiring Worksheet. In 2002, Hale was ranked number three on the Postal Service's employment register for laborer and custodian positions.

Later that year, in the Spring of 2002, the Postal Service announced that it planned to lay-off, or "excess," several postal clerks in the Chicago region. But pursuant to the postal clerks' union contract, the Postal Service was required to give the excessed postal clerks the opportunity to transfer to available custodial positions before the Postal Service considered any individuals on the employment register, including Hale. Despite this announcement, the authorization to withhold the custodial positions for the excessed postal clerks did not come until the following year.

On September 15, 2003 the Postal Service established a Hiring Worksheet to fill seven Laborer and Custodian positions. Because of Hale's ranking on the employment register in 2002, he was ranked number three on the Postal Service's newly created Hiring Worksheet. The applicable job description for the position of Custodian and Laborer[2] stated:

> Custodian duties include manual cleaning, and buildings and grounds maintenance. Laborers, custodial perform manual labor in connection with the maintenance and cleaning of the buildings and grounds. Applicants must have the ability to stand, stoop, bend, and stretch for long periods of time and to manually lift and carry objects weighing 45 pounds or more, without assistance. Laborers, custodial operate power-assisted tools, and power-driven custodial equipment, and must have the ability to work at heights from ladders, walkways, and scaffolds.

Def.'s Rule 56.1 Statement, Ex. L. In addition to these requirements, the Custodian and Laborer position was a restricted position for which only preference eligible veterans could apply.

On September 17, 2003 the Postal Service issued a letter that authorized "the withholding of 400 full-time clerk level 5 and below, mail handler positions, level 5 and below and custodial positions level 3" to minimize the displacement of the excessed postal clerks. Def.'s Rule 56.1

---

[2] The job description made part of the record was published in 2005. See Def.'s Rule 56.1 Statement, Ex. L. The parties do not dispute that this job description existed in 2003, when Hale was placed on the Postal Service's Hiring Worksheet for the position of Custodian and Laborer. Hale's purported factual dispute regarding the job description centers on whether the Postal Service hired individuals for custodial positions based solely on what the job description required. The parties do not dispute the 2005 job description's express content.

Statement, Ex. P. Around the same time – in or around September 2003 – the Postal Service placed five individuals from outside the employment register and Hiring Worksheet into the vacant Custodian and Laborer positions. These individuals were identified as Yvonne Hudson, Judie Gardner, Robert Kinnard, Kimberly Carney and Willie Stevens. None of them qualified as preference eligible veterans. As it turned out, the Illinois Department of Rehabilitative Services ("DORS") referred these five individuals to the Postal Service, who hired them on a non-competitive basis in front of every eligible veteran on the Hiring Worksheet and in front of every available excessed postal clerk for which the custodial positions had been reserved. The Postal Service admitted later that it was a mistake to hire the DORS candidates for these positions.

On November 24, 2003 the Postal Service officially cancelled the Hiring Worksheet that it issued in September 2003. In December the Postal Service sent to Hale a letter advising him that the Hiring Worksheet was cancelled "due to the decision to withhold all vacant craft positions for placement of excessed clerks." Def.'s Rule 56.1 Statement, Ex. R. Ultimately, the Postal Service did not hire Hale for the position of Custodian and Laborer.

Since Hale was a former employee, in the event the Postal Service selected Hale for the open position, Hale's application would have been treated as one for reinstatement. This is significant because an applicant's status as a former employee affects the applicant's suitability for reinstatement, where the applicant is seeking a position similar to the one he or she formerly held. For instance, § 313.53 of the Postal Service's handbook regarding personnel operations states, "It is USPS policy to refuse employment to persons who are removed from the Postal Service or from other federal employment for cause, or who resigned after being notified that charges proposing removal would be, or had been, issued." Def.'s Rule 56.1 Statement, Ex. V. There is one exception to this written policy. The Postal Service will discount § 313.53 "in

5

exceptional cases," upon approval by "the Field Director, Human Resources, or Manager, Employment and Development." Id. Even still, built into the policy is an exception to this exception. According to the handbook, division approval is not required for a former employee applicant previously terminated for cause if: (1) the former employee was separated for scheme or other qualification failure; and (2) the job for which the employee is considered does not require a similar ability. See id. To illustrate, the Postal Service gives the following example: "[A] clerk separated solely for scheme failure could be considered for a carrier or mailhandler position without division approval." Id. John Richardson ("Richardson"), the area manager of Human Resources for the Chicago District since 1993, testified that he has never approved the reinstatement of a former employee removed for cause or the reinstatement of a former employee with an unsatisfactory work history.

## B. PROCEDURAL HISTORY

On November 21, 2002 Hale filed an "EEO Complaint of Discrimination in the Postal Service," alleging a violation of the Veterans Preference Act and further discriminatory conduct on behalf of the Postal Service. Compl., Ex. 3. On December 8, 2004 an Administrative Judge with the Equal Employment Opportunity Commission ("EEOC") issued a decision in the case, finding that the Postal Service did not discriminate against Hale. In response, the Postal Service issued to Hale a "Notice of Final Action" (the "Notice") which adopted the ruling of the Administrative Judge and notified Hale of his right to appeal the Postal Service's final action. Compl., Ex. 6. The Notice further advised Hale of the following rights regarding his civil claims:

> You have the right to file a civil action in an appropriate U.S. District Court within ninety- (90) calendar days of the date of your receipt of the Postal Service's final action, within ninety- (90) calendar days of the EEOC's final

6

decision on any appeal, or after 180 days from the date of filing an appeal with the EEOC if no final decision has been rendered.

Id. On April 12, 2005 the EEOC Office of Federal Operations affirmed the final agency order on appeal and, on July 28, 2005, denied Hale's request for reconsideration. Compl., Ex. 5. The EEOC further advised Hale that he had ninety days from the date of its decision to file a civil action in the District Court. On October 24, 2005 Hale filed a Complaint for Employment Discrimination in this Court, alleging that the Postal Service discriminated against him on the basis of race, gender, disability and retaliation when the Postal Service chose not to hire Hale for a custodial position in 2002. Thereafter, the Defendant filed the instant motion for summary judgment, which is fully briefed and before the Court.

## II. DISCUSSION

### A. STANDARD OF DECISION

Summary judgment is proper when there is no showing of a genuine issue of material fact in the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, and where the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Sides v. City of Champaign, 496 F.3d 820, 826 (7th Cir. 2007) (quoting Brummett v. Sinclair Broad. Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005)). In determining whether a genuine issue of material fact exists, all facts are construed in favor of the nonmoving party, who, in this case, is Thomas E. Hale. See Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 780 (7th Cir. 2007). But the court's favor toward the nonmoving party does not relieve that party of the obligation to "do more than simply show that there is some metaphysical doubt as to the material facts." Waukesha Foundry, Inc. v. Indus.

7

Eng'g, Inc., 91 F.3d 1002, 1007 (7th Cir. 1996) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince the trier of fact to accept its version of the events." Steen v. Meyers, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)). The mere existence of some alleged or possible factual dispute will not defeat an otherwise properly supported motion for summary judgment, as speculation will not suffice. Amadio v. Ford Motor Co., 238 F.3d 919, 927 (7th Cir. 2001); see also Borcky v. Maytag Corp., 248 F.3d 691, 695 (7th Cir. 2001). "Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors," and discrimination law would be unmanageable if disgruntled employees could defeat summary judgment on mere speculations about the defendant's motives. See Rand v. CF Indus., Inc., 42 F.3d 1139, 1146 (7th Cir. 1994) (quoting Visser v. Packer Eng'g Assoc., Inc., 924 F.2d 655, 659 (7th Cir. 1991)).

## B. DISCRIMINATORY HIRING PRACTICES

Hale's first claim alleges that the Postal Service discriminated against him on the basis of his race, gender and disability when the Postal Service chose not to hire Hale for the open custodial position. Hale failed to present any direct or circumstantial evidence from which to draw an inference of discrimination; thus his claim must proceed under the indirect burden-shifting method of proof established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under this method, a plaintiff may create a presumption of discrimination by establishing a *prima facie* case of discrimination. Bahl v. Royal Indem. Co., 115 F.3d 1283, 1290 (7th Cir.

8

1997). This presumption then shifts the burden to the defendant to put forth a legitimate reason for its actions. Id. From there, the burden shifts back to the plaintiff to show that the defendant's excuse was merely a pretext for discrimination. Id. As to the first step, to establish a *prima facie* case for discrimination, Hale must proffer evidence that: (1) he belongs to a protected class; (2) he applied for and was qualified for the open position; (3) he was not hired for the position sought; and (4) the Postal Service filled the position with a similarly-situated individual outside of plaintiff's protected class, or the position remained vacant. See Jordan v. City of Gary, 396 F.3d 825, 833 (7th Cir. 2005).

The Postal Service attacks Hale's discrimination claim on two grounds. First, the Postal Service asserts that Hale cannot establish a *prima facie* case of discrimination because he was not qualified for the custodial position for which he applied. Second, the Postal Service claims that Hale's *prima facie* claim fails because the Postal Service did not fill the custodial position with a person similarly-situated to Hale, who was outside of his protected class. The government further argues, in the alternative, that even if Hale established a *prima facie* case of discrimination, the Postal Service gave several, non-discriminatory reasons for its failure to hire Hale for the custodial position. The Court agrees with the Postal Service on all three points.

### 1. Qualifications for the Position Sought

On the evidence presented, it is clear that Hale was not qualified for the custodial position for which he applied. Recall that the job description for the position of Custodian and Laborer required that the candidate have the ability to perform an assortment of strenuous physical activities. At his deposition, however, Hale testified that he suffered from a number of physical impairments. Specifically, Hale stated that he had "four herniated disks in [his] neck, in [his] cervical spine, [and] two in [his] lumbar spine." Def.'s Rule 56.1 Statement, Ex. C. at 38. He

9

further testified to having sciatica, torn cartilage in both of his wrists, hypertension and unstated disabilities in his ankle and feet. Id. Hale also claimed that because of a back condition, he is "only supposed to walk like a couple of blocks," and that he could not bend over, get on his knees, or perform "on-the-go moving...because of dizziness and fatigue." Id. at 39, 41-42. Because of these impairments, Hale testified that his physician restricted significantly the physical activities that he was able to perform. Some of these restrictions, in fact, would have clearly kept Hale from meeting the Postal Service's expectations of candidates for the custodial position. As such, Hale's own testimony cuts against any argument that he was qualified for the custodial position as it is described in the Postal Service's job announcement.

In response, Hale urges the Court to ignore the Postal Service's stated job description because, the argument goes, the job description purportedly was "not in line with the actual job requirements" that the Postal Service considered. To support this argument, Hale points to the "Essential Job Functions" listed in the notice of assignment for a single DORS candidate hired for the custodial position, Kimberly S. Carney ("Carney"). According to Carney's notice of assignment, the Postal Service expected Carney to answer phones, conduct light filing, type and use a copy machine, run errands and open office mail. See Def.'s Rule 56.1 Statement, Ex. T. In light of this, Hale argues that because he was allegedly able to perform each of these functions, he was therefore qualified, at the very least, for the same custodial position given to Carney. The Court finds this argument unavailing.

Regardless of the "Essential Job Functions" listed on Carney's notice of assignment, Hale failed to present any evidence that Carney was unable to perform the required custodial duties, or that she was otherwise not qualified to perform under the Postal Service's job announcement. Hale's argument, in short, is speculative and unsupported. On the evidence presented, there is

10

nothing from which a reasonable jury could infer that the job announcement did not constitute the Postal Service's actual job requirements for the Custodian and Laborer position. This being the case, Hale neither establishes that the Postal Service ignored its own job description, nor presents any evidence to support the argument that he was able to meet the physical demands required for the position. Hale therefore fails to establish the second prong of the McDonnell Douglas indirect method of proof. Accordingly, the Court finds no reason for the parties to proceed to trial on this issue.

### 2. Similarly-Situated Employees

The Postal Service argues in the alternative that even if Hale had established that he was qualified for the position of Custodian and Laborer, he was not similarly situated to the individuals that the Postal Service eventually hired for the open positions. To make out a *prima facie* case, Hale must show at a minimum that the DORS candidates hired for the position of Custodian and Laborer "possessed analogous attributes, experience, education, and qualifications relevant to the positions sought." Raymond v. Ameritech Corp., 442 F.3d 600, 610-11 (7th Cir. 2006) (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000)). To be considered similarly situated, the DORS employees must be directly comparable to Hale in all material respects. Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002) (citations omitted); Greer v. Board of Educ., 267 F.3d 723, 726 (7th Cir. 2001). The evidence presented shows that they are not.

Even still, the Court recognizes that the similarly situated inquiry is a flexible, common-sense comparison based on plain similarities, as opposed to a strict one-to-one evaluation. Argyropoulos v. City of Alton, No. 07 C 1903, 2008 WL 3905891, at *8 (7th Cir. Aug. 26, 2008). But, the inquiry requires "enough common features between the individuals to allow [for]

11

a meaningful comparison." Humphries v. CBOCS W., Inc., 474 F.3d 387, 405 (7th Cir. 2007). A meaningful comparison is one that serves "to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable: complaints about discrimination." Id. In this case, to isolate that independent variable, the Court must identify an employee who, like Hale, served as a former Postal Service employee, received numerous suspensions while employed, took the required examination for employment and who was placed on the employment register and Hiring Worksheet for the open position. Once that employee is identified, it must be clear that he or she nevertheless received more favorable treatment than Hale. Nichols v. S. Ill. Univ.-Edwardsville, 510 F.3d 772, 786 (7th Cir. 2007) (requiring plaintiffs to show that the alleged similarly situated employee had also engaged in comparable misconduct, such as gross insubordination and disobedience). All things considered, such an employee does not exist.

Again, Hale is a former Postal Service employee who took an examination that placed him on an employment register and, eventually, on the Hiring Worksheet for the position of Laborer and Custodian. This was a typical route for a potential employee seeking employment with Postal Service. But it was not the only route. The Postal Service hired the individuals to whom Hale claims to be similarly situated through a non-competitive process for people that the Illinois Department of Rehabilitative Services (the "Department") designates as disabled. Through this process, the Department hands over to the Postal Service a list of DORS candidates, and, in turn, the Postal Service places those candidates in various positions as it sees fit. In this way, the DORS candidates hired for the custodial positions came to the Postal Service under a completely different hiring process than Hale. As it happened, the Postal Service hired the DORS candidates under an entirely different hiring authority and pursuant to different

12

standards. This gravely differentiates Hale from his alleged comparators, regardless of their gender and disabilities, or lack thereof. See Kelley v. Goodyear Tire and Rubber Co., 220 F.3d 1174, 1179 (10th Cir. 2000) (finding plaintiff was not similarly situated to applicant because he or she was an internal applicant who was not required to go through the full interview process as a matter of policy).

In addition, Hale cannot identify a single DORS candidate who engaged in comparable misconduct while employed by the Postal Service. In fact, the Postal Service previously employed only one of the DORS candidates, Yvonne Hudson. Hale points to no evidence showing that Ms. Hudson ever engaged in any misconduct, let alone threatening a supervisor in the work place. As it turned out, the Postal Service had no reason to invoke its policy of either not hiring Ms. Hudson or seeking approval to hire her. Hale's case is substantially different, since Hale's application would have undergone substantial scrutiny given his long history of misconduct and suspensions. This alone takes Hale outside any group of individuals that the Postal Service hired for the custodial positions, where those individuals did not commit any prior misconduct. See Tomanovich v. City of Indianapolis, 457 F.3d 656, 667 (7th Cir. 2006) (employees were not similarly situated where they did not engage in similar misconduct); see also Jordan v. City of Gary, 396 F.3d 825, 834 (7th Cir. 2005) (noting that a similarly situated person is one who "occupied the same job level and engaged in similar past misconduct" but was nevertheless treated differently); Radue, 219 F.3d at 617 (stating that the similarly situated requirement is satisfied when plaintiff and coworker engaged in similar conduct); Phillips v. Union Pac. R.R. Co., 216 F.3d 703, 706 (8th Cir. 2000) ("Employees are similarly situated when they are involved in the same misconduct or misconduct that is of 'comparable seriousness.'"); cf. Morrow v. Wal-Mart Stores, Inc., 152 F.3d 559, 563 (7th Cir. 1998) (holding that an

allegedly comparable employee is not similarly situated to the plaintiff if the event that triggered the investigation into the plaintiff's misconduct was not present in the case of the so-called comparable employee).

## C. Pretext for Discrimination

Putting aside Hale's failure to establish a *prima facie* case for discrimination, the Postal Service offered a legitimate reason for not hiring Hale. Richardson, the area manager of Human Resources for the Chicago District, testified that the Postal Service was required to give excessed clerks the opportunity to transfer to available custodial positions before it considered individuals on the employment register, which included Hale. Def.'s Rule 56.1 Statement, Ex. M., Richardson Dep. at 71 ("Richardson Dep."). Richardson further testified that despite this requirement the Postal Service mistakenly filled the custodial positions with DORS candidates. Id. at 77-78. More importantly, Richardson testified that in 2003, when the Postal Service filled the positions with the DORS candidates, he and others believed that the Postal Service had the authority to do so. Id. at 79. According to his testimony, Richardson did not find out that the Custodian and Laborer positions were restricted to preference-eligible veterans until a few years after the Postal Service cancelled the relevant Hiring Worksheet. Id. This, on its face, is a valid, non-discriminatory reason for not hiring Hale.

In response, Hale argues that the Postal Service's proffered reason is a mere pretext for discrimination. It is well-settled that to establish pretext a plaintiff must identify such weaknesses, implausibilities, inconsistencies or contradictions in the employer's proffered reasons that a reasonable person could find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). Pretext involves more than just faulty reasoning or

14

mistaken judgment on the part of the employer; it is a "lie, specifically a phony reason for some action." Sublett v. John Wiley & Sons, Inc., 463, F.3d 731, 737 (7th Cir. 2006) (citations omitted). In assessing a plaintiff's claim that an employer's explanation is pretextual, the Court will not sit as a "'super personnel review board' that second-guesses an employer's facially legitimate business decisions." Culver v. Gorman, 416 F.3d 540, 547 (7th Cir. 2005). Rather, we ask only whether the employer's explanation was honestly believed. Id.; Grayson v. O'Neill, 308 F.3d 808, 820 (7th Cir. 2002) (explaining that the court is only concerned with "the issue of whether the employer honestly believes in the reasons it offers") (citing Wade v. Lerner New York, Inc., 243 F.3d 319, 323 (7th Cir. 2001)). In the end, a defendant is entitled to summary judgment if the company honestly believed in the nondiscriminatory reasons it offered, even if those reasons are foolish, trivial or even baseless. Hartley v. Wis. Bell, Inc., 124 F.3d 887, 890 (7th Cir. 1997); McCoy v. WGN Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992). We note, finally, that to show a pretext the burden lies with the Plaintiff to demonstrate that the Postal Service's articulated reason for its actions either had no basis in fact, did not actually motivate its decision, or was insufficient to motivate its decision. Velasco v. Ill. Dep't of Human Serv., 246 F.3d 1010, 1017 (7th Cir. 2001).

In this case, Hale falls woefully short of establishing a pretext on behalf of the Postal Service. Hale's argument centers on the proposition that the Postal Service made an "incorrect" hiring decision. If anything, Hale is right to say that the Postal Service made a business mistake when it placed the DORS candidates into custodial positions reserved only for preferred veterans and for excessed postal clerks. But this alone is not a pretext for discriminating against Hale due to his color, race, sex and disability as he alleges. The Postal Service demonstrated by way of direct testimony that its employment managers honestly believed that they made a valid business

decision. This testimony remains undisputed. Hale fails to direct the Court to any evidence in the record to suggest that the Postal Service did not honestly believe that it engaged in valid behavior when it cancelled the Hiring Worksheet and hired the DORS candidates. Thus, under the principles set forth above, the circumstances surrounding the Postal Service's poor decisions do not demonstrate a pretext for discrimination. Grube v. Lau Indus., Inc., 257 F.3d 723, 730 (7th Cir. 2001) ("A pretext for discrimination means more than an unusual act; it means something worse than a business error; pretext means deceit used to cover one's tracks.").

Likewise, Hale's alternative argument that the Postal Service offered "shifting and inconsistent explanations" also fails to demonstrate pretext. While shifting explanations for a hiring decision may demonstrate pretext in some cases, those explanations must be sufficiently inconsistent so that they permit an inference of mendacity or dishonesty. Pantoja v. Am. NTN Bearing Mfg. Corp., 495 F.3d 840, 851 (7th Cir. 2007) (citing Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 577 (7th Cir. 2001)). The evidence in this case does not permit such an inference. Despite Hale's portrayal of the events, Richardson testified that in 1998 he denied Hale's application for reinstatement because of Hale's past work history and disciplinary conduct. Richardson Dep. at 48. Hale's complaint in this action, however, has nothing to do with the Postal Service's decisions regarding Hale's reinstatement back in 1998. This action involves the Postal Service's decision to deny Hale employment in 2002. The stated reason for Hale's denial was "the decision to withhold all vacant craft positions for placement of excessed clerks." Compl., Ex. 4. Deborah White, a manager with the Chicago District, confirmed this reason at her deposition. There, the following colloquy took place:

Q. Why wasn't Mr. Hale hired off the hiring work sheet?

A. The hiring work sheet was cancelled.

16

[...]

Q. I asked you why Mr. Hale wasn't hired off the hiring work sheet; and you told me that it was because the hiring work sheet was cancelled, correct?

A. Right.

Q. Why didn't the Postal Service ask the Office of Personnel Management for permission to pass [Hale] over?

A. We didn't pass him over.

Q. Why do you say that the Postal Service did not pass him over?

A. We didn't hire from that hiring work sheet.

Def.'s Rule 56.1 Statement, Ex. O, White Dep. at 24-25 ("White Dep."). With that, the evidence shows that the Postal Service ultimately decided not to hire Hale for the custodial position because the relevant Hiring Worksheet was cancelled. Richardson's testimony is not inconsistent with this reason, as Hale would have us believe, as it simply refers to a prior instance in which Hale was seeking reinstatement. This in no way permits an inference of mendacity on the part of the Postal Service. Hale presents nothing more for this Court to consider on the point and, accordingly, his argument in support of pretext must fail. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.") (emphasis in original). Summary judgment is therefore granted in favor of the Postal Service on Hale's claim for discrimination.

## C. RETALIATION

Hale's second claim is that the Postal Service unlawfully retaliated against him in response to his prior EEO activity. To establish a prima facie case of retaliation, Hale must show

evidence of: "(1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." Squibb v. Mem'l Med. Ctr., 497 F.3d 775, 786 (7th Cir. 2007) (quoting Burks v. Wis. Dep't of Transp., 464 F.3d 744, 753 (7th Cir. 2006)). To support his claim, Hale points to the EEO action he brought against the Postal Service in 1993, in which he challenged his 1988 dismissal. Inherent in this claim, however, is the difficulty in showing that Hale's prior EEO action was a motivating factor in the Postal Service's decision to cancel the Hiring Worksheet, given the amount of time that lapsed between the two occurrences. See Smith v. Dunn, 368 F.3d 705, 708 (7th Cir. 2004); see also Wright v. Ill. Dep't of Children & Family Servs., 40 F.3d 1492, 1500-01 (7th Cir. 1994) (noting that courts cannot draw strong conclusions of retaliation "from the mere fact that protected speech may have preceded an adverse employment decision."). Temporal proximity is commonly used by Plaintiffs as evidence of direct retaliation, although the argument is often rejected. See, e.g., Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918 (7th Cir. 2000) ("Speculation based on suspicious timing alone...does not support a reasonable inference of retaliation."). Here, in light of a 10-year time difference between the protected activity and the adverse employment action, temporal proximity does not exist.

Hale's only evidence with respect to a causal connection is Richardson's testimony that he reviewed Hale's personnel file "before deciding not to hire him." Pl.'s Resp. at 9 (citing Pl.'s Rule 56 Statement). But we have already established that Richardson's testimony in this regard went to his decision to deny Hale's application for reinstatement in 1998. Again, this took place years before the Postal Service mistakenly filled the open positions with the DORS candidates and, subsequently, decided to cancel the Hiring Worksheet, which is the only adverse employment action of which Hale complains. Richardson's testimony therefore does not support

18

a claim of retaliation. See Sanchez v. Henderson, 188 F.3d 740, 747 (7th Cir. 1999) ("[A]s a matter of law, mere knowledge of the plaintiff's protected activity prior to an adverse employment action does not establish a retaliatory motive."). Instead, Richardson's testimony reveals a procedure through which he reviewed a personnel file in light of receiving an application for reinstatement. Aside from this, Hale identifies nothing in the record from which to draw even a slight, reasonable inference that Hale's 1993 EEO claim was a motivating factor in the Postal Service's decision to fill the custodial positions with DORS candidates and then cancel the Hiring Worksheet. Not only does this case present a 10-year lapse in time, but Hale is unable to put forth any evidence, either direct or circumstantial, that links Hale's protected activity in 1993 with the Postal Service's decision in 2003. Thus, without anything more, Hale cannot establish the required causal link between his prior EEO claim and the adverse employment action. Cf. Springer v. Durflinger, 518 F.3d 479, 485-86 (7th Cir. 2008) (refusing to infer retaliation from a series of minor incidents that were not unusual) (citing East-Miller v. Lake County Highway Dep't, 421 F.3d 558, 564 (7th Cir. 2005)).

Hale also seeks to establish retaliation under the indirect method of proof. This method, like the one for discrimination, requires a burden-shifting analysis. What makes it unique, however, is that causation is not a part of the *prima facie* burden. Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 644 (7th Cir. 2002) ("Plaintiff so proceeding need not show even an attenuated causal link."). Even so, putting causation aside, Hale still is unable to show that he is similarly situated to any individuals who did not file EEO claims and, as a result, who the Postal Service treated more favorably. Not only that, but Hale cannot refute as pretext the Postal Service's legitimate business reasons for mistakenly hiring the DORS candidates and for cancelling the Hiring Worksheet. The Court previously discussed these issues at length, and

there is no need to recount the Court's reasoning here. Summary judgment is granted in favor of the Postal Service on Hale's claim of retaliation.

## D. VETERANS EMPLOYMENT OPPORTUNITIES ACT

For his final claim, Hale argues that the Postal Service violated the Veterans' Preference Act when it hired the non-veteran DORS candidates for the restricted custodial positions. Hale makes his claim under the Veterans Employment Opportunities Act ("VEOA"), which provides a cause of action for preference eligible employees "who allege[] that an agency has violated such individual's rights under any statute or regulation relating to veterans' preference." 5 U.S.C. § 3330a. The VEOA further provides that in pursuit of their claims veterans "may file a complaint with the Secretary of Labor," and after that complaint process is exhausted, may then file an appeal with the MSPB. Id.

In its motion, the Postal Service contends that Hale's claim is barred because he failed to complain first to either the MSPB or the Department of Labor ("DOL"); thus, the Postal Service maintains that Hale failed to exhaust his administrative remedies prior to filing his claim in this Court. Hale, in response, asserts that he was not required to first file his claims with the DOL or the MSPB because he filed a "mixed case" complaint, which he could have filed through the EEOC *or* the MSPB process. Either way, the Court need not decide this limited procedural issue, since, based on the evidence, Hale is clearly unable to establish that the Postal Service violated the VEOA when it chose to cancel the relevant Hiring Worksheet.

In enacting the VEOA, Congress provided for a special appointing authority for preference eligible candidates or veterans, which allowed them to compete for vacant positions if the hiring agency chose to accept applications from individuals outside its own workforce. See VEOA, Pub. L. No. 105-339, § 2. In this way, the VEOA's plain language expressly prohibited

"an agency from denying a preference eligible or veteran the opportunity to compete for an open position." Ramsey v. Office of Personnel Mgmt., 87 M.S.P.R. 98, ¶ 9 (2000). Nevertheless, the VEOA did "not provide that veterans will be considered eligible for positions for which they are not qualified." Smyth v. U.S. Postal Service, 89 M.S.P.R. 219, ¶ 7 (2001) (citing Ramsey). In other words, the statute requires only that the hiring agency provide veterans an opportunity to compete. This requirement does not strip the hiring agency of its discretion in hiring. See Millner v. Dep't of Veterans Affairs, No. 03-3267, 2004 WL 434049, at *2 (Fed. Cir. Mar. 8, 2004) (finding that the hiring agency's decision to cancel its vacancy announcement and to not fill the previously open position is entirely within its discretion).

In this case, the Postal Service made a discretionary decision to cancel the Hiring Worksheet that included Hale. That decision, as it turned out, was based on the Postal Service's obligation to withhold custodial positions for excessed clerks. Yet, while the Postal Service delayed hiring for custodial positions, it received a list of DORS candidates that it eventually hired, mistakenly and on a non-competitive basis, in front of the candidates on the Hiring Worksheet. After this error, the Postal Service issued a letter to Hale explaining that the Hiring Worksheet was cancelled because of the situation with the excessed clerks.

The Court finds that the hiring agency was working entirely within its discretion when it took the above actions. The Postal Service gave Hale the opportunity to compete for the custodial positions, but due to a variety of circumstances the individuals on the Hiring Worksheet, including Hale, were not employed. This is not a violation of the VEOA. See Smyth, 89 M.S.P.R. 219 at ¶ 7 ("[T]he evidence clearly established that the appellant was allowed to compete for the position he sought and that his status as a preference eligible was fairly considered in the selection process. This is all that the VEOA requires."). Moreover, the

21

Court finds it critical that Hale was not qualified for the custodial position. Any "preference" that a hiring agency gives to a candidate necessarily assumes that the candidate is qualified for the position. Again, Hale testified to a myriad of physical ailments that precluded him from meeting the Postal Service's stated job requirements. This testimony is undisputed. As stated previously, Hale was not physically qualified for the position of Custodian and Laborer. As such, this significantly weakens any claim of a violation under the VEOA. Lynch v. United States Postal Service, No. 04-3411, 2005 WL 565932, 127 Fed. Appx. 487, 489 (Fed. Cir. 2005) (holding that a mail carrier who was removed from his position for a physical inability was properly ruled ineligible, even though he was a preferred candidate); Cossette v. Dep't of Agric., No. 04-3205, 2004 WL 2370601, 113 Fed. Appx. 398, 401 (Fed. Cir. 2004) (finding no violation of the VEOA where reviewer found that he did not meet the basic requirements of the position). Accordingly, the Court grants summary judgment in favor of the Postal Service on Hale's claim of violation of the VEOA.

### III. CONCLUSION

For the reasons stated above, Defendant John E. Potter's Motion for Summary Judgment against Plaintiff Thomas E. Hale is granted in its entirety.

IT IS SO ORDERED.

ENTER:

CHARLES R. NORGLE, Judge
United States District Court

DATED: 9/2/08

22